Good afternoon, ladies and gentlemen. This is the time set for a re-hearing on Bonk in the case of Easley v. City of Riverside. Yes, thank you. Good afternoon to everyone. My name is Dale Gallipo, and I'm representing the plaintiff and appellant Michael Easley. And if it's okay, I'd like to try to reserve about 10 minutes, but we'll see how it goes. The one other thing I wanted to mention to all of the judges is when I was 12 years old, I lost my hearing completely in my left ear. So if you start talking and I'm not looking at you immediately, I'll get there in a second or two. So I apologize for that. You never can tell where the sound is coming from in this room anyway, so you'll be in good company. From the plaintiff's perspective, we feel this is a very important case, not just for Mr. Easley, but for attorneys and litigants practicing 1983 litigation, both with respect to the rules that apply to summary judgment and the issue of qualified immunity, which cases these days. From our perspective, if you assume all of the plaintiff's facts as true and take all reasonable inferences from those facts, this case needs to go to a jury. With respect, though, I wrote a case called Lopez v. Gelhaus recently. The Supreme Court denied cert, and we had a situation where someone had a toy gun, but never was raised. I get your point about the summary judgment, but qualified immunity seems to just ride over that aspect if the circumstances the Supreme Court has described control. In this case, you've got Officer Watkins shouting, he's got a gun, it's night, your client is running, he grabs his pants as he runs, he reaches into his waistband to grab something, he turns his body, throws an object to the side. Under those circumstances where the Supreme Court has told us that you don't look at this in 20-20 hindsight, you look at it from the perspective of the reasonable officer on the scene at the time, why wasn't it perfectly reasonable for the officer to fear that his life was in danger and to fire? Well, for several reasons, and I am familiar with the case that you authored. First of all, the evidence in the officers admit, both Officer Macias and the police practice expert Robert Fonzi, that you can't shoot someone for running even if you think they have a gun. Well, that's not an evidentiary issue. That's a matter of clearly established law, right? Both. I think, yes. I mean, it wouldn't matter what the – it doesn't matter what the experts think. Our clearly established law is that a police officer may not shoot a fleeing suspect in the back, even if he's armed, unless the suspect does something to threaten either the public or the officer's safety. Do you agree? That's correct, Judge. Okay, so it doesn't matter what the police expert says. Correct. I mean, but I do think when Drummond v. City of Anaheim discussed whether training and policy could be a factor to consider in whether the officer would know or be put on notice that his conduct was unlawful, and the next point I wanted to make is both Officer Macias and their expert admitted that if someone is running with a gun, they're likely to toss the gun because they don't want to get caught with it, and if they toss the gun, it's inappropriate to shoot. Now, Officer Macias was aware of that. Where did this come from? His testimony. No, but I mean, where you're saying that it's unlawful to shoot, is that a case that you're referring to? Right now I'm referring to the testimony of Officer Macias, the involved officer. Oh, he's saying that was his understanding of the law? And his training. And his training. So I only point that out because when we get to qualified immunity and the question is whether on the second prong, if you want to go there, whether an officer would be put on notice, I think that's a factor that we can look at in addition to the established case law. See, I still don't understand that. I mean, here's where we're at. I'm sorry. Judge Pius, why don't you go next? No, no, go ahead. Finish up. We all clearly established case laws, you can't shoot a fleeing suspect in the back even if he's armed. You agree? Yes. Okay. Your client's testimony, which may turn out to be entirely false, but we're at summary judgment, is that he was running away, never turned around, threw away his weapon, and then four seconds later was shot. Correct. That's the essence of the case. Okay. So if that testimony is true, which it may well not be, the officer's story strikes me as perhaps more true, but it really doesn't matter what I think, isn't that sufficient to show that there's no qualified immunity? Yes. And we don't have to worry about police expert testimony or what Officer Macias believed or didn't believe. Clearly established law says you may not shoot someone running away from you in the back even if he's armed. And in this case, he was, even if he remained armed after he threw the gun away, he never turned around or posed a threat at anyone. That's exactly correct. And that is, in short, the essence of our argument. And at a minimum, we think if this case is reversed, which we think it should be, and there's appropriate special interrogatories, for example, to be given to the jury if the trial judge thinks that is appropriate, then we understand and agree with that. But at this ---- I find the way in which this case comes to us very strange. Right. That is, I don't think I've ever seen a situation where a judge, a district judge, conducted a pretrial evidentiary hearing and then said, sua sponte, I'm granting you summary judgment. It was an evidentiary hearing where the district judge, from what I could tell, drew, made credibility determinations and found particular facts. The judge does point to the notion that it was with one fact that he considered to be in dispute that it was immaterial, and that was whether or not the shooting was two to four minutes or four seconds after he tossed the gun. But it strikes me as odd here that you have this evidentiary hearing and then you have the district court judge finding facts. It's not ---- I've never seen it done this way, ever. In any summary judgment, much less in this context. Right. And what I could ---- what struck me here is what he ---- what the district court judge said at the outset was that he was trying to determine whether there were factual disputes that were material to his determination to decide qualified immunity. And I thought that there were at least three very material facts that are in dispute, and that those facts need to be decided by a jury. In fact, you demanded a jury. You have a Seventh Amendment right to a determination of those facts. That's what I thought was going on here. Am I missing something? No. In fact, Judge Paez, I probably have handled a couple hundred 1983 cases, and this is the only time, at least in my career, that I've ever seen this. And I think the real risk ---- in fact, there was a discussion with counsel about their MSJ motion, and we made certain agreements. I understand those aren't binding. But I think the real risk in the court holding an evidentiary hearing in this matter, you almost start, whether you are realizing it or not, you almost start weighing the evidence and judging credibility and taking the role. Yes. But also, with regard to the stipulation, you gave something up for that, didn't you? Right. So essentially ---- Why isn't it binding? In other words, it was a quid pro quo. It wasn't simply that you just idly said this. Is that correct? What did you give up?  Well, in essence, the discussion was whether they were going to file summary judgment at all, and then the agreement was if I dismiss some of the claims, they would agree not to bring summary judgment on qualified immunity or on other claims, and that was the agreement. Counsel, isn't it an undisputed fact that your client took his gun with his hand and put it basically to chest or shoulder level and made a Frisbee-like throwing motion of the gun? Well, I would answer it this way. The officer claims that the weapon was in his right hand, and there's an issue, as you know, whether he ever really identified it as a gun or not. Mr. Easley says he threw it with his left hand away from where the officer was, forward and to the left. I agree with you, Your Honor, that there's some descriptions in the record of throwing it in a Frisbee-type fashion, but I think the real dispute in all this is whether he turned at all when he threw it in relation to the fact that he did not turn. Why is that a dispute? He says he didn't. We have to view the facts in the light most favorable to Mr. Easley. He said he did not turn. Why do you think that's a dispute, that he looked back? Yes, I agree, Your Honor. For purposes of this, because we're at a summary judgment phase, I totally agree with you that we have to accept the fact, for purposes of this analysis, he did not turn. Right, and so it's dark, and to Judge Smith's point, it's dark, it's scary, everybody's adrenaline is rushing, all of that. Officer Macias, or an officer in his position, is entitled to qualified immunity if he's, or maybe he's not ineligible, if he's wrong. He can be wrong. He just can't be unreasonable. It seems to me from the briefing that your argument about unreasonableness really keys on the fact that Mr. Easley said that he was shot three or four seconds after he flung the gun, and we have to view that fact in the way he describes it. But if there's other facts you want to call, at least from my scorecard, if you're willing to buttress this argument that Officer Macias was unreasonable, that would be helpful. Yes. Well, first of all, I think the law is you could be mistaken as to the law, not mistaken as to facts. That's not entirely true, is it? If you think that a toy gun is a real gun, or you think that a glue gun is a factual mistake, that is reasonable also is permissible. Yes. Under the, yes. And we have that case law. We have the cell phone case, the wallet case. Right. Where officers make that mistake in the heat of the moment. Right. Why was this officer unreasonable? Okay. So, first of all, I would say he's unreasonable because there's evidence to show the incident did not happen the way he described. The way the officer described, you mean? The way the officer described. Well, in a way, I don't care what the officer says. I just care about what Mr. Easley says because we're taking his evidence. Okay. Mr. Easley says, I was running. I was holding up my pants. The gun was in kind of on the right-hand side as I ran. I reached across with my left hand to get the gun, and then I threw it.  That's correct. Mr. Easley says, three to four seconds after I threw it, he shot me. And then he shot me three times, and he ends up, I guess, it must be the third shot that hits him in the spine. And there's nothing in that testimony that says he turned around. Correct. There would have been some movement in the shoulder necessary to reach with the left hand across the body. That's the only thing that was necessary that's clearly part of his testimony. There's no other testimony that he turned around. So we must assume that the only motion of his shoulders was the motion necessary to reach across with his left hand, get the gun, and fling it. I mean, that's the story we have to believe, and we have to ask ourselves then, was it unreasonable for the officer to shoot three to four seconds after he saw the gun being thrown away? That's correct. And from the plaintiff's position, if you assume those facts, then I think it was not only supports a constitutional violation under the Fourth Amendment, but qualified immunity should not and cannot apply to that factual scenario. On summary judgment. On summary judgment only. A jury could surely find that the facts were the way the officer described, and therefore the officer wasn't entitled to qualified immunity. The only question is whether we can resolve this issue on summary judgment. Correct? That's correct, Judge Hurwitz. And as you know, the dissent in this case, much more eloquent than I could ever put it, and one of the things I think that was mentioned at the end of the dissent was he's not saying there's not a possibility that there could be qualified immunity. And then he talked about the issue of special interrogatories before a jury. But Judge Pratt, I think, correctly stated there's just too many material factual disputes at this juncture to grant qualified immunity, and these factual disputes have to be decided by the trier of fact. And that was his reference to the Seventh Amendment right to jury trial. But does Mr. Eesley's evidence also have to negate two things? One is whether the officer could have perceived him as turning around or at least as preparing to turn around because he raised his hand. And the second is how long, even if he did hit him for three or four seconds, how long did he, I gather there is some evidence about how long it would take to shoot somebody. Well, in fact, that was in the record. I mean, one of the things in the record was perception reaction time, and it was talked about milliseconds or a quarter of a third of a second. I think what's important from the plaintiff's perspective is Officer Messiah saw him throw the object. So it's not a situation where it was thrown, but he didn't see him throw it. And I think a reasonable inference is, and the evidence we have to accept, he threw it three or four seconds, I would say four seconds, for purposes of this argument before he was shot. Counsel, why would we take the four-second rule when, on cross-examination, your clients agreed with the attorney that it was two to three seconds? Well, from our perspective. He's given testimony of both three to four and two to three. I absolutely agree with you, Your Honor. And I would say whether it was three seconds or four seconds, at least from the plaintiff's perspective and analysis, it wouldn't matter because the officer observed him throw the object. And two seconds would still be unreasonable? From the plaintiff's perspective, it absolutely would be. But, counsel, he would have had qualified immunity if he'd shot him after one second, but because he waited three or four seconds, he loses the immunity? It's an interesting question, right? Because at what point is it too long? And obviously, if the object was in his hand and he recognized it as a gun and actually was in the process of making a movement with it and the shooting happened at that point and the plaintiff said, I was trying to throw it away and the officer said, I didn't know he was throwing it away at that exact second, then I would say we'd have a different case. What case clearly establishes that because of four seconds as opposed to one second, every reasonable officer would know he couldn't shoot? Well, first I would say it falls within the obvious, and I'll tell you why. If someone had a weapon, a gun or a knife, and was told to drop it, and they did drop it after being commanded to do so, and the officer observed them drop it, and then three or four seconds later they shot him, the person who dropped the knife or dropped the gun on command, from the plaintiff's perspective, that would be an obvious constitutional violation. In this case, easily dropped it without being asked to do so. And from the plaintiff's perspective, the analysis should not be different. If it was a split second, then I think we'd have another argument. But we don't have that here. Realistically, counsel, you're talking about the dart, people are running, the partner says he's got a gun, four seconds and your heart's pounding, adrenaline is rushing through your body. I don't know that I know there's a great difference between one and four seconds. And hasn't the Supreme Court repeatedly admonished us that we don't look back on a 20-20 basis and say, well, this is the way it should have been? We have to deal with what the reasonable officer saw at the time and felt. Well, first I would say there is a material difference between one second and four seconds. But I also would say with respect to the 20-20 vision of hindsight, I think it's important in this case to recognize that there's an argument that could be made with a reasonable inference that Officer Macias never recognized the object as a gun. And I'll tell you why. Let's say that's true. If that's true, that would have been even more dangerous to him because his partner said he's got a gun. So if he threw something, that might mean that he still has the gun. Well, but I thought of that argument, and it's a creative one, Judge Smith. But the response to that is the only object that Officer Macias says he saw in the hand, the only object, was thrown. And that object that was thrown, which he saw thrown, he asked easily, what did you throw? And then when Officer Barrett came, who was a fellow officer, he said he threw something. And understandably, the testimony from Macias and Barrett is, if I had seen him throw a gun, I would have told Officer Barrett and the fellow officers. I said he threw something. So the reasonable inference obviously is he never recognized it as a gun. I get to what you're saying, is the other officer said he thought he possibly had a gun, and if he threw something other than a gun, then he still could have a gun on him. He said he's got a gun. Let me ask you this. This, as Judge Bias just pointed out to you, the District Judge Suosponte ruled basically on summary judgment. How does the burden get allocated there? If somebody moves in the normal course for summary judgment, we know how it goes. But if the Judge Suosponte does that, do we do the same thing there that we would if, say, the police had moved for summary judgment in terms of who we believe or whose testimony do we credit? Yes, Judge Smith, I think that's one of the problems with having the evidentiary hearing. It was so unusual, and I think understandably the district court judge played a role of weighing evidence and judging credibility and maybe figuring out in his mind the two different stories and merging them somehow and coming up with a set of facts. But isn't it also true? People do that in summary judgments. But the answer to Judge Smith's question, I'm over here, has to be the person resisting summary judgment has a right to have his evidence believed. So whether or not it's the officer moving for summary judgment or the judge moving for summary judgment, your client's the person resisting summary judgment, and he gets to have his evidence believed. Now, I've got a slightly variant question on this. If we take it as given, which I think we should, that the law is that even if someone has a gun and he's running away, you don't get to shoot him. So in some ways, it's a red herring to talk about, well, when did he throw the gun away? It's not as though the officer had the right to shoot him before he threw the gun away because he was running away. The real question is, when, if ever, did he make any motion that the officer could have considered threatening? Now, if the officer could have considered the throwing motion threatening, then we get to the three to four seconds. But I'm not even sure we get to the idea that he made a threatening motion because according to Easley's testimony, he reaches across his body with his left hand and he flings it like that. Is that threatening? I don't think it is, or at least I don't think the jury is forced to conclude that it is. I agree with you, Your Honor. In fact, as part of the evidence from Easley that we have to assume to be true for this purpose, he never turned, he never made a threatening movement with the gun towards the officer at any time, and the gun was thrown forward and to his left, away from the officer. So I agree with you. I think there's, at least taking all reasonable inferences in Easley's favor, there's no ‑‑ you can't shoot him for running with a gun. There's no threatening movement. And then the throwing and the timing is also supports a finding why this should go back to the district court. Can you help me with the record? Does the partner yell, he's got a gun? I thought the partner yelled, he's got a gun, at the beginning of the incident, not at the time that it was being thrown away. Is that correct? That's correct. That's correct. And that seems a perfectly reasonable thing. The guy jumps out of the car, runs away, holding onto his pants in a motion that makes it think that they've got a gun. I don't think that was an unreasonable suspicion on the part of the officer. Correct. And, in fact, I think they didn't see a gun at that point. But by the way he got out and his hand ‑‑ But surely the officer could have reasonably believed at that point that he had a gun. Yeah, I am not disputing that Macias thought he possibly had a gun. No, but I was just asking because what if ‑‑ let me just change the facts for a second. Sure. What if when he took the gun out of his pants and went to fling it, the partner at a different angle shouted, he's got a gun? What would your view of qualified immunity be at that point? Well, again, it would depend on the movement because it would depend on the movement, whether it was threatening towards Officer Macias or whether it was a movement to throw the gun away from Officer Macias. It would also depend on whether or not Officer Macias saw him throwing the object. And, again, if we get there, how much time passed before he shot him. Counsel, what case clearly establishes that when you have a fleeing suspect with a gun that all of those facts that you just talked about define whether a reasonable officer could reasonably fear for his safety enough to use deadly force? What case says what you just said? Well, yes, and I'll address it quickly if I can. First, I feel it falls within the obvious as Judge Pratt did in his dissent. But if you get past that, I think Tennessee v. Garner. That's where the court said an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat either to the officer or to others. And I think that's the key. If you look at Graham or Tennessee v. Garner, Colonel v. Ridgecrest, almost every case cited by this court where someone has a weapon or a weapon in their hand, the most important factor is an immediate threat. Did the person in either Garner or Graham have a weapon? I don't know the answer to that. I don't know, but the Colonel v. Ridgecrest. What case did they have a weapon? Well, let's take Colonel v. Ridgecrest for example, and Judge Pratt cites that case in the dissent. The reason that's important, there was a gun, and there was a dispute whether he had it in his hand raising towards the officer or not, but because he had his back to the officers, and of course Mr. Easley was shot in the back three times without any verbal warning he was going to be shot, and because the gun was not in his hand at the time he was shot, even though it was right next to Curnow, the court, the Ninth Circuit correctly held, this has to be decided by the jury, no qualified immunity. Can I ask one? Can I just go back to the procedural situation? Yes. Do you, I mean, assuming if we were to rule in your favor or if we were going to rule against you, but should we say, does this procedural question of the way this case happened, because it does seem that it obviously is rife with the problem of a, you know, nonconscious credibility determination, ought we to be arguing, ruling about this? Are you arguing that that itself was a problem, or you're not really, are you? Well, I would say, number one, either it should be highly disfavored for the obvious reasons we have in this case. I couldn't find a case that specifically said that under no circumstances could a U.S. District Court judge do this, but I had never seen it before, and I think it's inherently problematic because of exactly what we're discussing now. It's putting a judge in a position to start weighing the evidence. And so I think the case should be reversed for all the reasons we've been discussing. And I think it would be best if there could be a ruling that summary judgment should not proceed by way of evidentiary hearings before trial. Either someone should file a motion, as they usually do, or not, because the evidentiary hearing just runs too many risks. Do you want to reserve? Yes, and I don't know. I really apologize. So just to finish the thought on the clearly established law, again, I would say, Colonel, in all of the cases, including a case authored by Judge Smith, where someone has a weapon in their hand, but perhaps it's pointed down as opposed to pointed at the officer, such as a gun. In this case, there was no weapon in his hand when he was shot, and it wasn't in his hand for at least three or four seconds when he was shot in the back. Counsel, I do have one question about the physics here. Sure. So your client testifies that he throws the gun, and then either two to three or three to four seconds, depending on which part of his testimony you credit, he was shot by the officer. Is that correct? Yes. Okay. And they are running during this period. They've covered a total of about 100 yards, and according to his testimony, after he threw the gun, he was brought down five to ten feet from where he threw the gun. In three to four seconds, they covered five to ten feet? Well, I'm aware of that testimony, and I would say that could be an issue at trial. It doesn't make any sense, does it? Well, I think we'd say yes. If your client is running and they've covered 100 yards and he's got another three to four seconds or two to three seconds, he's not going to cover five to ten feet. I would agree, but then I agree with your point. And more distance would have been covered, but the time estimates are what we have in the record. And I agree an argument could be made at trial, but for this purpose, we have to assume the time that we have. Isn't that just a credibility issue? Yes. Yes, and I think that's part of it. And that's not proper on any form of summary judgment. That's correct, Judge Paez. I'll reserve the rest of my time if that's okay. Thank you all very much. Excuse me. Good afternoon, Your Honors. Alana Rotter for the appellee, Officer Macias. There are two broad areas that are coming up here and that I'd like to make sure we touch on, maybe adding a third on the procedural issue. Actually, I'd like you, if you don't mind, to start there because it's very disturbing to me, at least, that in the particular circumstances of this case, the district court took it upon itself to have this proceeding. Why wasn't it waived by the failure to move for summary judgment? Well, this Court has been clear that summary judgment may be granted sua sponte. So putting aside just the stipulation, taking one piece at a time, a court could have entered summary judgment had it wanted to. But sua sponte seems to suggest that no party has consciously waived that opportunity. As I said, that's just a first step. Secondly, sua sponte suggests on an existing record, not by making a new one. Again, this is an unusual procedure. Neither side asked for it. But at the same time, there was also no objection in the district court when the court proposed this. And I think that's equally important. The stipulation was that the defense would not move for summary judgment, would not seek summary judgment on a number of claims, not just the excessive force claim. We gave up a summary judgment motion on a Bain Act claim, on a State law negligence claim, on a State law battery claim. So to the question before about didn't the other side give something up, so did we. The question about the case law saying that a judge can issue summary judgment sua sponte, is any of that case law in a situation where the judge says, okay, we're going to now start from scratch and create a record for summary judgment? I'm telling you that you both have to now go and have to introduce your summary judgment record, rather than simply using what already exists. Is there any instance in which a judge can just start and insist that people have to create a record for summary judgment? Not that I am aware of. So that's a quite different thing. When it says that a judge can sua sponte, ask for summary, address summary judgment, usually he says, all right, we have enough of a record. I'm going to, you give me your briefs and we'll have summary judgment. But not, we're going to now start from scratch and create a record. But again, Your Honor, no objection in the district court when the court announced this was the procedure that it wanted to use. I would say that that is a forfeiture of this procedural objection at this point. There's, in fact, a case, I'm sorry, I don't remember which one. I could send a letter afterwards. But a case where the court essentially conducted a bench trial on qualified immunity and with no objection, made factual findings, admitted that it was making factual findings, just took it away from a jury. And on appeal, the holding was no objection by either party in the district court. So you don't get to come up now on appeal and complain about the procedural posture. But this didn't purport to be a bench trial. It purported to be summary judgment. Correct. My point was the effect of the lack of an objection when the district court announced that this was the procedure that it intended. I'm not even sure it started out to be summary judgment, because if you read the first day of the transcript, he said, the district judge said that he wanted to determine whether or not there was a material or tribal issue of fact that precluded a determination of qualified immunity. I read that as essentially summary judgment, since that is summary judgment. No, and then at the end. He says he's granting summary judgment at the end. Then he says at the end, he says, well, I'm going to sui sponte now grant summary judgment. Sure. But usually when we're talking about material fact disputes, that's usually most often in the context of could we do this without an objection. He was granting qualified immunity, and he wanted to know whether or not there was a factual dispute that would preclude him from granting qualified immunity. Right. He was trying. He said that he thought that there was guidance from this court and from the Supreme Court that qualified immunity should be decided at the earliest possible stage, and that he was taking that obligation seriously, and he was going to try to do it. There are a number of cases that say that when there's a factual, there's a material factual dispute that is essential to a proper determination of qualified immunity, it goes to the jury. Yes. And here Mr. Court's position and our position is that there is no material fact dispute, and that even taking Easley's evidence in the light favorable to Easley, this is well within the breathing room that we give officers under qualified immunity for reasonable mistakes of fact or of law, especially in light of the reasoning. He can be wrong. I'm over here. Sorry. He can be wrong. There's certainly plenty of cases where we have officers have received qualified immunity because they mistakenly understand that the use of deadly force is necessary. They mistakenly understand that they're in immediate risk because it turns out when all the dust is settled, the individual is really holding car keys or a wallet or a cell phone or something like that. We've all read those cases, and that's just an example where an individual's wrong. The officer can be wrong. He can't be unreasonable. So it seems to me that this boils down to you have to defend, I think, that it was reasonable for the officer to shoot this individual 2 or 3 or 4 seconds after he threw the gun, because that's what Mr. Easley says happened. Yes. So what's your best shot at that, please? My best shot at that is that, A, it's a range of how long the time is, as we all know, and I just want to mention to the point that was being discussed earlier about this 5 to 10-foot estimate. What we can see is that Mr. Easley isn't sure how long it was. Mr. Easley was not sitting in a courtroom measuring 4 seconds on his watch, right? He was running at full speed. This is an 85-second pursuit. But you would agree at summary judgment there's not to be credibility determinations. There aren't to be credibility determinations, although here I would question what the credibility determination is to draw when all of these estimates are from Mr. Easley.  No, I'm just saying that when we look at all of Mr. Easley's testimony taken together, the gist of it is it was a very short delay. It was a delay. I'm not questioning that. But he clearly doesn't know how long the delay is, given that he's here. And the distance can be explained by if you pause long enough to throw something the way he described, it causes you not to be running as fast. Possibly. So it's all could fit together. Possibly. But we still have on cross after his initial, what he said initially was a few seconds, maybe three to four. That's how he started out. He never said definitively four. And somebody said to him on cross, well, could it have been two or three? So you had control of the gun until two or three seconds, right? Assume that it's four for a second. Sure. So to go back to the reasonable mistake. Your position is as a matter of law that if a fleeing suspect without turning toward the officer throws away his weapon, throws away something, the officer is entitled to shoot him four seconds later? The Supreme Court's guidance is to look at this. Is that your position? No. I'm asking on the facts of this case. No. I'm asking you as a matter of law, if someone is fleeing from a police officer, throws away something, the officer doesn't know what it is, but has reason to think it's a gun, may the officer wait four seconds and shoot him? Again, I hate to not give a yes or no, but it depends on the facts of the case. Well, if it's not a yes or no and it depends on the facts of the case, summary judgment was inappropriate. No, it depends. So those are the undisputed facts here, at least the facts taken in a light most favorable to Mr. Easley. So tell me, is it your position that as a matter of law it's okay to shoot the suspect then? Yes, on the facts of this case. Again, not the disputed facts about which hand it's in and all that. So on which facts? Specifically which facts? On the facts that this is an 85-second interaction where it begins as a car chase, a car pursuit, in which the car that Mr. Easley is driving. No, his wife's driving. I'm sorry. I misspoke. The car that the wife is driving, although the officers don't know who's giving instructions about how to drive. So the car that Mr. Easley is in runs through a parking lot in which there are many other cars and people and narrowly misses swide swiping a car. It's going much faster than what is appropriate to drive through a lot, doesn't yield to lights and sirens. Is Mr. Easley suspected of a violent crime? No. So it's a serious traffic stop, but it's a traffic stop. It's a traffic stop, but in which... Why does that make a difference in terms of the shooting? It makes a difference because we're trying to put ourselves in the perspective of the officer. And I invite the court to watch the video of this chase to help put yourselves in that perspective. But this is all information that goes to the totality of the circumstances for when Officer Macias is assessing the threat that Mr. Easley potentially poses. So is it your position, though, that the car chase would have given an officer a reasonable cause to shoot? No. My position is that the car chase suggests that Mr. Easley is potentially dangerous. Because he's a passenger in a car? Well, we don't know who's instructing the driver of that car to drive recklessly. So we have no information whatsoever about what Mr. Easley has done. But the officer is, again, on the ground in the situation confronting it and is assessing the risk based on the totality of information he has. So tell me objectively on that. What's the risk that arises out of the bad actions of his spouse in driving the car? The risk... I'm still having a difficult time figuring out why once Mr. Easley exits the car, based on that, he's a risk to others. By the way, I don't know why that matters, because I think that Officer Macias reasonably believes he has a gun. But I just don't see why the car chase makes a bit of difference. I see it as difference because the fact that Mr. Easley has a gun, we have discussed, is not enough to entitle Officer Macias to shoot. The question is what... But you just said the car chase isn't enough either. Again, it's the totality of the circumstances. And ultimately, it's the fact that the gun comes out. It's the fact that Mr. Easley admits that the gun comes out. But Mr. — but Officer Macias did not know that the gun came out. Officer Macias is unrefuted... On the facts most favorable. Well, we don't have to completely throw out Officer Macias' testimony. We have to credit Easley's testimony when there is a conflict between Macias and Easley. But also we have to credit, of the things Macias says, we presumably credit the things that are more favorable to Easley. And Macias, at least a couple of times, indicated he didn't know what was... Well, Officer Macias didn't... Officer Macias testified without contradiction that he saw Easley... a gun in Easley's hand on the right side of his body. That wasn't a contradiction. In his right hand, he said. He did say in his right hand. But again, it's dark and qualified immunity allows reasonable mistakes of fact. But what do you mean by without contradiction? I mean, he — Easley says he didn't take it out of his — a gun out of his pocket or out of his waistband with his right hand. No, Easley says I took it out of my pocket with my hand. Yeah, but did you take it with his right hand? No, with my left hand, but again, on the right side of my body. So again, giving breathing room... He can be wrong. He can be wrong. The officer can be wrong. This is the breathing room for the reasonable mistakes. He's running, again, full speed chase, adrenaline pumping. This is part of where the car chase becomes relevant. It's an 85-second intense interaction. But I'm still waiting for the answer. Left hand, right hand. Yes. He can be wrong. He can be wrong. But why is it reasonable for him to shoot someone who's running away, shoot in the back after the gun has been thrown? And according to Easley's testimony, he never turned. That is to say, according to Easley's testimony, he never turned and threatened the officer. He just threw it away. Easley says, I never turned with a gun in my hand towards Officer Macias. But again, as the panel majority wrote, and as there was a question earlier today, the throw that Mr. Easley describes, a Frisbee throw strong enough to propel this gun 50 feet away while you're running is going to involve some movement of your torso. And if you are the officer running behind Mr. Easley without information that Mr. Easley is planning to throw this weapon, you could read reasonably or mistakenly the torque. And I think if you could just finish that thought, even if we give you that, because he's doing some movement that's tough to see at night, it's still the case on this record. I'm still struggling. With the delay. He still shot in the back two or three or four seconds after he throws the gun. How do we get past the case law on that? Two answers for you. One is that this falls within the reasonable mistake aspect of both the force analysis. Graham says an officer might mistakenly but reasonably believe more force is necessary than, you know, that a suspect is likely to fight back and might use more force than is necessary. Even if we take it as true that the gun was thrown several seconds earlier? What's the reasonable mistake there? The mistake is not process. The mistake is not processing fast enough or being so in the moment to, you know, have a mistake. Again, I still think I need to do this. I've got a question about the timing and its interrelation with the hearing that the judge had. If this were an ordinary summary judgment, we would have deposition testimony. We would have affidavits. We would not have cross-examination. What we have here is Easley testifies three to four seconds. It's on cross-examination that the words are put in his mouth, two to three seconds, and he agrees. So am I supposed to pay attention to that? Because that wouldn't have happened if this were an ordinary procedure. The two to three seconds actually was from initially from Easley's deposition. Easley was also all over the place at his deposition. And in his deposition at one point he said two to three seconds, and that's where that question came from. So that ER-294 is the deposition? No, ER-294 is the evidentiary hearing. But the reason the question was phrased as it was, so you had the gun until two to three seconds before, was because at his deposition he had said that it was two to three seconds. Now, did he volunteer that, or were those words put in his mouth? They weren't put in his mouth. He said several different things. Well, in his direct on 291, he says, after you threw it, what happened next? A few seconds, maybe three to four seconds later, I was shot. That's what he said on direct. Right. That was at the evidentiary hearing. But at page 347 of the excerpts of record is the deposition. What? And you're about to read what he says. What's he say? Yeah, he says, how long after you threw the gun did you feel an impact to your back? Five seconds. He's been shot. He says five seconds. On this page he says maybe two, three seconds. Another page he says five seconds. Another page he says five. He's all over the place. He may be all over the place. He may be unbelievable in a credibility sense, but don't we still take the facts in the light most favorable to him? Yes, but I think what they all boil down to is he didn't have a watch, and he's clearly estimating. And which facts, because if he has several different facts, is the judge, to the degree he was entitled to look at those. Facts most favorable. He can pick one of those facts and credit that. Again, to the degree he's entitled to do that. He also, I believe, easily said that he fumbled for it in his pants. That's another thing that the officer could take into account, right? Well, it easily says that he pulled it out of his pants pocket, and the officer said, I saw the gun come out. But the ultimate answer with all these. Well, the officer doesn't say he saw the gun come out. I saw. The officer says he saw an object come out. The officer. We can infer it's a gun because we know easily had a gun, but the officer doesn't say he saw a gun. The officer says he saw a gun come out. The officer says that he wasn't. He also said at other points. What did you throw? He threw something. Yes, he threw something. And he also told the other officer that I saw him throw something. So the throw is clearly something. If we get to play around with the best parts and worst parts of everybody's testimony. But he says I saw him throw something. So the throw is something. He said I saw that there was a gun, and I saw the gun left his hand, and I'm not sure how the gun left his hand, is Macias's testimony. That's one one. That's testimony. But he also, before the testimony, at the time of the event. Right. He didn't say he saw a gun. He said he saw something. He said he threw something. But again, I'm drawing a distinction here between I saw something, I saw a gun in his hand, I saw him throw something. He said the gun left his hand, and he wasn't sure how. The throw, after the fact, he heard a metallic clink, and he ascertained that it was a gun. But his testimony is I saw him throw something. I know I'm obsessing on this procedure. Sure. But to go back to it again, were all of the people who testified at the hearing, did all of them have depositions? Or state? I mean, was there a record aside from this hearing? I believe all of them were deposed, except possibly the excerpt. Well, that makes it also more weird that we're having an evidentiary hearing. We should just be looking at the depositions, as we usually do in a summary judgment. We could do that. They're in the excerpts of record. But again, no objection. Were any of the excerpts of the depositions admitted at the evidentiary hearing? They were. Parts of them were provided. Were they admitted? I don't believe the Court made. Counsel, please. I'm not sure, Your Honor, I could check that. Were they used to impeach anybody? I don't believe so, Your Honor. Did plaintiff's counsel ask for any delay in the hearing in order to conduct more depositions? No. No objection whatsoever, at least on the record, as far as I am aware. I want to just go back to a question that Judge Christin asked about the reasonable mistake. And I would, the overlay here is qualified immunity with its clearly established wrong. And the requirement of a case factually on point. The Kissela v. Hughes decision earlier this year from the Supreme Court, the Mullinex decision, the White v. Pauley decision, the Supreme Court has said over and over and over again that we don't define the right at too high a level of generality. We look to the particular facts. It says prior case must squarely govern the specific facts at issue. That's Kissela. Must have a case where an officer acting under similar circumstances was held to violate the Fourth Amendment. That's White v. Pauley. But if that's your position and the officer had waited 30 seconds to do what he did, would you still say the same thing? I think it would be a much harder case. Well, there is no Supreme Court case with 30 seconds. There is no Supreme Court case with 30 seconds. Or 15. Or 15. Or two minutes. True. So this question of having to have a case exactly on point surely can't mean we're counting the number of seconds, does it? Well, but we also don't have a case with a chase like this one, with someone who admits that he just pulled out and threw a gun like this case, which is the kind of furtive or harrowing gesture that this Court in George said would justify using excessive force. If a suspect is armed and makes a harrowing or furtive gesture, that could be a basis for using force. Right. But not wait. But I was asking about how long one waited after that gesture to use the force. Understood. But I'm saying it's not just the wait. It's the entire – you're supposed to look under Graham at the totality of the circumstances, and I think that all goes to the totality of the Supreme Court. What about the Curnow opinion, which was the one that Your Honor pointed to? Sure. The Curnow. I know he wasn't running, but what difference does it make? He wasn't running. But he was there with a gun. But hadn't just had the gun in his hand. Hadn't just pulled it out. The facts as the Court assumed them in Curnow was that a man was sitting on the floor of his house with a woman in his lap, not having done anything to her. I don't understand. It says that at the – as I'm reading it, the police – Curnow had already picked up the weapon. Laracker, who was stationed at the window, yelled, freeze police. At that minute, officers came through the door and Curnow raised his weapon. That was the officer's version of events, Your Honor. Okay. Curnow relied on a statement of the woman who was in his lap, Ms. Taylor, and her – let's back up a second. The facts of Curnow are that – I believe the use of deadly force was lawful because Curnow did not point the gun at the officers and was not facing them when they shot him the first time. Right. That's in the legal analysis section. Right. It doesn't say they weren't holding. He wasn't – didn't have the gun. In the facts section, it's that the gun was next to him, but not that he hadn't grabbed it before the first shot. But that's not what they held. Well, here the gun was not within reach anymore. Anymore. And, you know, we can go back to basics. Tennessee v. Garner basically says you can't shoot somebody because they're eluding capture.  But that's, again, to the higher level of generality than the Supreme Court currently is permitting. So you think now it's okay to shoot someone in the back who's eluding capture if the facts aren't exactly like Tennessee v. Garner? Well, the facts in Tennessee v. Garner where there was a statute that said – You can answer the question or not. Yes, there was a statute, but the court was pretty clear that that is not permissible. The fact that someone is fleeing and you want to apprehend them is not enough to shoot them. That's the Tennessee v. Garner holding. And even if they're armed? The – Well, we've said any number of times. We've said it. But in Tennessee v. Garner, if we're looking at what that establishes, it was an unarmed robbery suspect running through a backyard. Do you agree that it is clearly established that one may not shoot a fleeing suspect in the back even if the suspect is armed? Simply because you want to apprehend them, no. But if they present a threat and an immediate harm, or you could reasonably perceive that they – Fair enough, fair enough. But, I mean, do you do accept that some situation beyond Tennessee v. Garner is an excessive use of force even when there's a fleeing suspect who's armed? It may be. But, again, the Supreme Court dictates looking at the totality of the circumstances, including whether there's a threat presented. And that's always relevant. If I can build on what Judge Hurwitz and you were just saying, I think we do have as established law that if someone is running away from the officer, the officer knows or has good reason to suspect that he's armed. That is not enough to shoot him, even though we know he's armed. So the fact that he's running away and has a gun is not enough.  And, in fact, Macias didn't shoot him before the gun came out. I want to keep going. And, at some point, he even no longer has the gun. So the real question is, was the act of throwing away the gun as easily describes it enough for the officer to have reasonably interpreted it as a threat of deadly force? And easily says, all I did was reach across my body with my left hand, take the gun out of my pocket, and fling it in a Frisbee motion, which is, of course, we know what a Frisbee motion is. So in a way, it doesn't matter when he threw the gun away. What we really care about is the motion that easily describes himself as having taken. Could the officer reasonably have interpreted that as a threat of deadly force? I think unquestionably. Well, that's the question. To me, it's unquestionable because the officer, again, we don't require our office to be omniscient. That's Wilkerson versus Torres. Counsel, isn't the question whether every reasonable officer would know that it isn't a threat? Yes, that's the qualified immunity analysis, certainly, as opposed to just was there a constitutional violation. The qualified immunity analysis is an extra buffer because it protects all but the plainly incompetent. So, yes, every reasonable officer would have had to have known that the general principles about not shooting a fleeing felon applied in this context and did not permit a reasonable mistake as to what that movement was, whether it was shooting or whether it was. What do we do with the fact that the officer's story is not just inconsistent with Easley's story, but it's flatly inconsistent? He doesn't say, I interpreted the throwing motion as a threat. What he says instead is he had the gun in his right hand. He was, quote, blading toward me with the gun aimed at me. I shot him three times. The first and second shots hit him, and I'm not even sure where the third shot hit. It might not have. He didn't say, I saw this motion with his shoulders, and I thought he was going to shoot me. He didn't say that at all. No, what he said was Mr. Easley was starting to turn to me. With a gun in his right hand. With a gun in his hand. He saw the gun leave Easley's hand. He says he doesn't know. And he wasn't sure how. He says he doesn't know how it left, whatever that means. Right, right. But it's not that he misunderstood the gesture. He, the officer, correctly understood that the gun left Easley's hand. Well, he understands something left Easley's hand. Well, no. Wait a minute. He says, I saw the gun. That's what he says. The gun left Easley's hand, but he doesn't say what was thrown. Well, wait a minute. I saw the gun come out. He started to blade toward me. I saw the profile of the gun on the side of his face. At that point, I thought he was going to shoot me, so I discharged my weapon. He then testified, did the gun leave his hand after the first shot? After the second shot, I believe so. Was it after the third shot? I can't be sure. I mean, he says he saw the gun. He saw the gun leave the hand. He wasn't sure that it was. Well, if it wasn't the gun, then he certainly didn't see him turn around and aim a gun at him. Well, if the gun had been in the hand. Yeah, but he said he didn't know. If the gun had been in his hand, but he then threw something, right? According to Easley, the only motion that was made was him throwing the gun. Right. So what motion could have led the officer to think that he was turning to shoot him with a gun? Well, the motion was the one that Easley describes as I was starting. I was doing my frisbee throw, so I raised the gun, first of all. He says, I raised the gun across my body. Of course, that would have been in front of his body. It would have been, but if you're pulling it out of your left jeans pocket. And the person is running right behind you, and you say you're holding your pants with your right hand. Right. There's, again, going to be something that is visible behind you to the person running directly behind you. Well, he pulls it out across his body and throws it. And raises it and throws it, got your arm out all the way to the side. Again, reasonable. I mean, isn't this kind of detail exactly why you had the trial? I mean, as to what somebody, I don't off the top of my head know what it would look like from behind if somebody was throwing in a frisbee-like motion. And I gather there's no expert evidence, uncontested expert evidence about that. So how am I supposed to know? Maybe not. But the Supreme Court, Kissela and White, these are all. Easley can repeat that motion in front of the jury. I understand he's a paraplegic, but it's paralyzed below the waist. Yeah, he repeated it for the district court who described it. Well, he can repeat it for the jury. He could. But, again, the Supreme Court's recent case law, Kissela and White, these are summary judgment cases, qualified immunity on summary judgment, where there is disputed testimony and conflicting versions of the facts. Well, I mean, you've been telling us that the Supreme Court is never going to affirm a qualified immunity finding, and that's possible. But in terms of a case in which there is a history of case law about shooting people in the back, which there wasn't in Kissela, it was an unusual, odd set of facts. Because there's likewise no case law. It's not just a shooting someone in the back. That's like the kind of generalized statement that the Supreme Court says we don't use on qualified immunity. Instead, you look at, you know, there was running. He admits that he pulled out a gun and had it in his hand within a few seconds. It was dark. These are all circumstances. But then you are saying that there's never going to be qualified immunity because there's never going to be facts to that degree of detail. Exactly. Well, in Lopez, this Court denied qualified immunity, but it was a different. Because in Lopez, in some respects, except for the darkness, it's very similar to this because you have the officer turning around. You have a young man. There was a dispute which hand it was in. And he told him to drop the gun. It turned out to be a toy gun. We found, based upon what had been found there, that the gun never pointed up. But my colleague in dissent said it was turning and coming up. Therefore, it was like a duel. It went to the Supreme Court. They had three different conferences before they finally denied cert. But they did deny cert, and we sent it back to the jury. Does that have any role in this case? Judge Thomas, I seem to have run out of time. Yes, please. The facts in Lopez are quite different than the facts in this case for several reasons. One reason, the opinion stressed that this was someone walking down the street casually during the day in an area where you would expect people to be casually, and that he looked like a kid, and that when he turned around with the gun in his hand, it was a nonaggressive gesture that was most likely a response to the chirp or the, hey, drop the gun command from behind him, that the gun was pointed down at all times. Even the deputy's reenactment of it had the gun pointed down at all times. There was a specific finding by the district court that the gun had risen maybe an inch, but could have risen further without posing any threat to the officers. Here we have not a daytime strolling down the street where the context is, the default should be there's nothing strange going on here, but rather a chase, someone who was fleeing whose wife's car didn't yield to lights and sirens, who was running with his hands on his waistband in a way that the officers recognized is often someone holding a gun. Testimony that usually when someone has a gun and they're planning to throw it, they leave it in the car. They don't take it with them. So here already the fact of taking it with them is putting the officer more on high alert. And then you have the admission that the gun came out, raised across the body, and thrown with a frisbee toss throw, which is a much larger move than the incidental one inch of swinging as someone non-aggressively turns around in Lopez. Thank you, Counsel. Thank you, Your Honors. Just on that last point, Judge Smith, with Lopez, though, in that case there was an object in his hand at the time that they recognized as a gun. Here the object that wasn't specifically recognized as a gun had been tossed for three, four seconds, and I think Judge Christian hit on it because that, I think, is a main issue in the case. One could imagine, quite frankly, if this decision stands and people with weapons drop their weapons, either voluntarily or on command, and we're going to say as a court it's okay for an officer to shoot them, either paralyze them or kill them, as long as they do it within four seconds. That would be absurd. And that's even contrary to the officer's training. This discussion I think we're having, as several of the judges have pointed out, makes it clear why this case needs to go back. There are just too many disputed issues of fact. And I do think on the procedural history, although I might not have cited it, I believe at some point I did object to the process going forward, but I think my objection was based at the time I was in such shock that we were having an evidentiary hearing on the issue that we had made some type of a deal regarding the filing of the summary judgment, but I don't have that citation. Do you know whether there was an objection? And if so, could you find it? Sure. And send it to Your Honors. Because I just think that this case got started off on the wrong foot with the process that started and the evidentiary hearing, and are there different reasonable interpretations that could be taken from the evidence? Of course there are. Was there at the time a record on which a summary judgment motion could have been made? Depositions, affidavits, declarations, whatever? Oh, absolutely. We had done full discovery in the case. This was at a pretrial conference, right? Yes, Judge Pius. At a pretrial conference. Yes. We had done full discovery on the case, depositions of everyone, experts. Well, if the judge wanted to so respond to do summary judgment, he could have just done summary judgment. Yes, Judge Pius. Not have an evidentiary hearing. Absolutely. And so I just think under the facts, you know, not recognizing the object specifically as a gun and having them throwing it, and quite frankly, it's probably not great for people to have guns in the first place, but we'd much rather have them drop it or throw it than keep them on them. And that's going to happen. And I think if this decision stands, I think the problems are the procedural steps that took place in the district court are problematic. I think the rules of the standard for summary judgment are being misapplied. As Judge Fletcher has pointed out several times, assuming Eastley's facts, you have no turn and no threatening movement, and he tossed an object three or four seconds before he was shot in the back without warning, this case needs to be reversed and go back to the jury. I realize that this is a difficult time where different courts and judges are interpreting qualified immunity. I get that. But the facts of this case, I would suggest, if you assume Eastley's version of facts, either falls within the obvious or, as Judge Hurwitz has pointed out several times, there's been precedent in this Court for a long period of time. You are way over your time. I apologize. So please, you can wrap up. Thank you all, then. Thank you all for your time. Yeah. Thank you very much. Thank you both for your arguments today, and I realize that we heard this on a little more accelerated basis. You've got to adjust your schedule, and we appreciate both counsel being able to do that. Thank you very much. We'll call it off, guys. The support for this session stands adjourned. Thank you.
judges: Thomas, Graber, W. Fletcher, Paez, Berzon, Bybee, Bea, M. Smith, Christen, Hurwitz, Bennett